This is an appeal by plaintiff, widow and administratrix of decedent Francis Bodnar, from a circuit court judgment dismissing Piper Aircraft Corporation, Avco-Lycoming Corporation, Montgomery Aviation Corporation, and Hangar One, Inc., as parties defendant. We reverse the judgment and remand the action for further proceedings consistent with this decision.
The facts in the case are those material facts alleged in the plaintiff's original and amended complaint, which we take as true, as they were considered to be so for the purpose of ruling on defendants' motion. *Page 1162 
On September 7, 1977, Francis Bodnar, a Georgia resident, was a passenger on a Piper Cherokee aircraft which crashed and burned on approach to the Macon, Georgia, airport while en route to Birmingham, Alabama. The plaintiff alleges that the crash was due to a malfunction in the airplane's defective exhaust system which allowed carbon monoxide to seep into the passenger compartment and overcome the pilot. The aircraft was put on the market in Alabama by Piper and was purchased in Birmingham, Alabama. The plaintiff alleges that the aircraft was in substantially the same condition at purchase as it was at the time of the crash and that it was negligently designed, engineered, manufactured, sold, and distributed by Piper. Plaintiff alleges that Avco-Lycoming, a corporation doing business in Alabama, negligently designed, engineered, manufactured, and sold the aircraft's exhaust system. Plaintiff alleges that Montgomery Aviation and Hangar One negligently failed to inspect, observe, and repair defects and corrosion in the exhaust system.
Plaintiff brought suit under Georgia's Wrongful Death Statute on September 5, 1979, against Piper, Avco-Lycoming, and other fictitious defendants. She amended her complaint to substitute Montgomery Aviation and Hangar One and to assert causes of action under Alabama's Wrongful Death Statute and Alabama's Extended Manufacturer's Liability Doctrine.
Defendants' motions to dismiss were based solely on the pleadings and stated as grounds that plaintiff's action was barred by the statute of limitations, failed to state a claim on which relief could be granted and improperly substituted the nonfictitious defendants. The court granted the motions without specifying the grounds upon which it relied and, under Rule 54, ARCP, rendered a final judgment. Plaintiff appealed, asserting that the trial court erred in granting the motion to dismiss.
The first issue presented is whether an action based on the Georgia Wrongful Death Statute is barred by the applicable statute of limitations. The action was properly brought under the Georgia Wrongful Death Statute, Ga. Code Ann., § 105-1302, as the death occurred in Georgia. The traditional conflict of laws rule of lex loci delicti long followed in Alabama dictates that the substantive law of the state where the injury occurred is applied when suit is brought in Alabama. Alabama GreatSouthern R.R. Co. v. Carroll, 97 Ala. 126, 11 So. 803 (1892);Dawson v. Dawson, 224 Ala. 13, 138 So. 414 (1931); Mullins v.Alabama Great Southern R.R. Co., 239 Ala. 608, 195 So. 866
(1940).
The issue here is whether that reference to Georgia law includes the Georgia statute of limitations applicable to this action. It is conceded that, under Georgia law, a two-year limitation applies to Georgia wrongful death actions. Defendants contend that the Alabama general one-year statute of limitations, Ala. Code 1975, § 6-2-39, is applicable, and the plaintiff's action is thus barred. They argue that because Georgia's statute of limitations for wrongful death actions is not "built-in" to Georgia's Wrongful Death Statute, Ga. Code Ann., § 105-1302, but is found in § 3-1004 of the Georgia Code, the Alabama conflict of laws rule does not include the statute of limitations. Instead they say that, under Battles v. PiersonChevrolet, Inc., 290 Ala. 98, 274 So.2d 281 (1973), the statute of limitations is a procedural and not a substantive law, the procedural laws of the forum state apply and, thus, the action is governed by Alabama's applicable statute of limitations. They further assert that, under Mullins v. Alabama GreatSouthern R.R. Co., supra, Alabama's two-year period for wrongful death actions is expressly confined to actions brought under the Alabama Wrongful Death Statute and that Alabama's general one-year statute of limitations, found in Ala. Code 1975, § 6-2-39 (a)(5), applies to this action, thereby barring it.
We disagree with defendants' assertions and hold that the Georgia two-year statute applies and that, therefore, plaintiff's action is not barred. The situation of this case is distinguishable from Battles. In that case, the court found that the plaintiff did not properly plead the limitations period under the Georgia law in her complaint, 290 Ala. at 105,274 So.2d 281. She improperly *Page 1163 
and insufficiently pleaded that "there is a two-year limitation of action for wrongful death under Georgia law."* By contrast, the present plaintiff averred in her amended complaint of May 23, 1980, that this "action is timely filed within the two-year period provided for a wrongful death action brought under the law of Georgia as prescribed in Ga. Code Ann., § 3-1004."
Additionally, in the years since Battles was decided, the Georgia Supreme Court has declared the two-year period stated in Ga. Code, § 3-1004, to be "the public policy" of that state.Taylor v. Murray, 231 Ga. 852, 204 S.E.2d 747 (1974).
We hold that the trial court erred in dismissing the claim founded on the Georgia Wrongful Death Act because it is not barred by the Georgia statute of limitations, which we hold is the applicable limitation period under our conflict of laws rule.
We further hold that it was not error to dismiss the claim founded on the Alabama Wrongful Death Act.
This Court has consistently adhered to the lex loci delicti
rule to determine which substantive law to apply in multistate tort actions. Spencer v. Malone Freight Lines, Inc., 292 Ala. 582, 298 So.2d 20 (1974); Alabama Great Southern R.R. Co. v.Carroll, supra. It was the traditional rule embodied in the original Restatement of Conflicts of Laws § 384 (1935), and had its conceptual foundation in the vested rights doctrine which stated that a right to recover for a foreign tort owes its creation and scope to the law of the jurisdiction where the injury occurred. Beale, 2 Conflicts of Laws 1286-1292 (1935). We recognize that the vested rights doctrine and lex locidelicti have been frequently criticized because they sometimes do not take into account underlying policy considerations in weighing the significance of the situs of the injury. Babcockv. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279,281, note 3 (1963). Note, Choice of Law Considerations inAlabama, 7 Cumberland Law Review 89 (1976). Many authorities and courts have advocated abandoning lex loci delicti as a conflicts rule in products liability and other tort actions.[1]
Some of the arguments advanced by the scholars and some courts in adopting a more flexible conflict of laws rule are compelling and may well find favor in this jurisdiction in the proper case, but the case before us is not such a case. Indeed, even if *Page 1164 
we were persuaded to do so, we would not necessarily apply the law of a state other than that compelled under the existing rule, because here the decedent was a citizen, a resident of Georgia, his death occurred there, and his widow remains there. Georgia law supplies a remedy for his death. Although there are several "significant" Alabama contacts, they do not outweigh the fact that the cause of action accrued in Georgia. Whether the Georgia courts would follow the Alabama Extended Manufacturer's Liability Doctrine under the facts of this case, we cannot say, but it would be inappropriate for us to assume that they would.
We reverse the judgment dismissing the cause of action based upon the Georgia Wrongful Death Statute because we hold that the Georgia statute of limitations is applicable to that claim. In all other respects, the judgments of the trial court are affirmed.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER and BEATTY, JJ., concur.
* Battles should be considered in light of the fact that it was decided under procedural rules of common law pleading no longer applicable in Alabama.
[1] Note, Products Liability and the Choice of Law, 78 Harv.L.Rev. 1452 (1965); Kuhne, Choice of Law in ProductsLiability, 60 Calif.L.Rev. 1, 10-11 (1976); Ehrenzweig,Products Liability in the Conflict of Laws — Toward a Theoryof Enterprise Liability under "Foreseeable and Insurable Laws":II, 69 Yale L.J. 794 (1960); Guest Statutes in the Conflict ofLaws: I, 69 Yale L.J. 595 (1960). For recent nationwide lists of state decisions abandoning or retaining the lex loci delicti
rule, see Comment, Abandonment of Lex Loci Delicti in Texas:The Adoption of the Most Significant Relationship Test, 33 Sw.L.J. 1221, note 4 (1980), and Gutierrez v. Collins,583 S.W.2d 312, 316, note 2 (Tex. 1979).
There are many other recent choice of law theories which a court may apply. There are Currie's "governmental interests" test; Von Mehren and Trantman's "functional approach"; Cavers's "principles of preference"; Leflar's "choice-influencing considerations" or "better law" theory; Ehrenzweig's "lex fori"
approach, and the Restatement Second's "center of gravity" and "most significant relationship" analysis. Currie, SelectedEssays on the Conflict of Laws (1963); Von Mehren and Trantman,The Law of Multistate Problems (1965); Cavers, The Choice ofLaw Process (1965); Leflar, Choice-Influencing Considerationsin Conflicts Law, 41 N.Y.U.L.Rev. 267 (1966); Leflar, AmericanConflicts Law (3rd Ed. 1977); Ehrenzweig, Private InternationalLaw, Ch. 3 (1972); Restatement (Second) of Conflicts of Laws § 6 and § 145.
In the area of products liability, there is the "combination of connecting factors" theory established by the Hague Conference on Private International Law at its 1972 Convention on International Products Liability Law. Fleming, DraftConvention on Products Liability (Council of Europe), 23 Am.J.Comp.L. 729 (1975); Lorenz, Some Comparative Aspects ofthe European Unification of the Law of Products Liability, 60 Cornell L.Rev. 1005 (1975); Park, International ProductsLiability Litigation: Choosing the Applicable Law, 12 Int'l Lawyer 845 (1974); Reese, The Hague Convention on the LawApplicable to Products Liability, 8 Int'l Lawyer 606 (1974).
Each has its relative strengths and weaknesses, as well as its extremely vocal critics. Discussion of each of these would be inappropriate and overly lengthy here.